ERICKSON v. BROOKLYN HEIGHTS RY. CO.

(City Court of Brooklyn, General Term. March 25, 1895.)

DAMAGES—WHEN NOT EXCESSIVE.

A verdict for $23,000 for personal injuries will not be disturbed as excessive where it appears that before the accident plaintiff was a healthy and robust woman, in the prime of life; that the injury necessitated the amputation of one leg below the knee, the stump of which had never healed, and was easily inflamed; that her arm had an enlargement, which interfered with its ready and full use; that her hearing was impaired, and that she suffered great pain.

Appeal from trial term.

Action by Anna C. Erickson against the Brooklyn Heights Railway Company for personal injuries. From a judgment entered on a verdict in favor of plaintiff for $23,000, and from an order denying a motion for a new trial, defendant appeals. Affirmed.

Argued before VAN WYCK and OSBORNE, JJ.

Morris & Whitehouse, for appellant.
Dailey, Bell & Crane, for respondent.

VAN WYCK, J.   It appears from the evidence in this case that the defendant has under its control numerous trolley lines engaged in conveying passengers through the streets of this city, that three of these—the Gates avenue, Fulton street, and Third avenue lines— run over the same tracks on Fulton street, at Bond street, that the gates to the platforms of the cars are opened for ingress or egress only on the right side of the car, as it is going, which is nearest to the curb; that a passenger desirous of reaching the other or left side of the street must leave the car on the right side, and cross over behind his car; that plaintiff, having entered one of the cars of the Fulton street line, on her way down town, thereafter alighted from the same when it arrived at the intersection of Fulton and Bond streets, on the right-hand side, and, with the object of reaching the left-hand side of the street, she passed on the cross walk behind the rear end of her car, which of course, to some extent, obstructed her view down the up-town track, until she was almost upon it; that while she was passing over this space, a Gates avenue car was approaching the rear of her car, sounding an alarm bell, to warn her to leave that track; that, as she left that track, she emerged from behind her car, in close proximity to the other track, and, while doing this, she looked down the latter track, having a clear view of about 60 feet, and saw no car in sight; when she continued to cross, and had almost cleared the up track, when the Third avenue car came up rapidly, and knocked her down, injuring her most seriously; that others were crossing at the same time, and in the same manner, who accomplished the passage in safety; that a person on the front platform of the Third avenue car saw the Fulton street car standing still at Bond street, and this plaintiff in the act of emerging from her car, while the Third avenue car was a short block away from her, and called his motorman's attention to the dangers that women were subjected to under such circumstances; that the Third avenue car motorman saw this Fulton street car stop, and knew it was his duty to slacken his speed, and get his car under complete control, for passengers alighting from the Fulton street car at this cross walk were expected to pass in the rear of that car to cross his track; that, notwithstanding the motorman expected or thought it likely some one would pass around the rear end of the Fulton street car, and upon his track, and notwithstanding his platform companion did see her so emerge when he was a short block away, and called this motorman's attention to her, this motorman drove his car right ahead, catching this woman just as she was about clear of his last rail, and knocking her down, and

running over her leg, when this same platform companion said, "I told you she would get hurt." These facts and circumstances certainly raised a question of fact as to the alleged negligence of this motorman, which was properly submitted to the jury, and by them, in our opinion, correctly decided. The question of contributory negligence was correctly disposed of in the same way. The rule laid down in Fenton v. Railroad Co., 126 N. Y. 625, 26 N. E. 967, and Dorman v. Railroad Co., 117 N. Y. 655, 23 N. E. 162, does not help the defendant in the motion for a nonsuit, for in those cases the plaintiff and the driver of the horse car both knew that the plaintiff could cross the car track in safety, and had a right to so assume until it was negatived by the plaintiff's unexpectedly falling down, when it was too late to prevent a collision.

The exception at folio 282 to the refusal of the court to charge that, if "the plaintiff emerged from the rear of the Fulton street car when the front of the Third avenue car was within fifteen feet of her, the defendant cannot be held liable because the motorman did not stop the car before the plaintiff was injured," is not well taken, for he virtually says he had reason to expect some one would emerge from behind that car when it stopped, and that it was his duty to reduce the car to complete control to avoid injuring such person; that he saw it stop when he was 30 feet away, and at once he slowed up, and his platform companion said he saw her at the rear of the Fulton street car, about to start across the street, when his car was a short block away, and called the motorman's attention to her danger; and the testimony further shows that the car, at its then speed, could be stopped within 5 feet. The exception at folio 283 is not well taken, for it would have excluded from the consideration of the jury the circumstances that the motorman knew that passengers were expected to emerge from behind the car stopping to let them off at street crossings, and that it was his duty to slow down, to give them a chance to cross over in front of him, and that in this case he did slow down for such purpose, but neglected to do so sufficiently to save her.

We do not think the other exceptions require any special notice, and this leaves for our consideration the contention of defendant that the damages, assessed at the sum of $23,000, are so excessive that the jury must have been unduly influenced by prejudice or sympathy. Before the accident, the plaintiff was a healthy and robust married woman, in the prime of life. Now, she has but one leg, one of them having been amputated below the knee, the stump of which has never been completely healed, and is easily inflamed; her arm has an enlargement, which interferes with its ready and full use; her hearing has been impaired, and she endured great suffering and pain. The contrast of her prior with her present condition certainly discloses a great and sad change, for which we do not think the sum awarded does more than compensate her; therefore the verdict herein cannot be disturbed on such ground. The judgment and order must be affirmed, with costs.